**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Eric Taylor**</u>

    **v.**                                   Case No. 11-cv-341-PB
                                        Opinion No. 2012 DNH 193

<u>**The City of Manchester, et al.**</u>

<u>**MEMORANDUM AND ORDER**</u>

    The claims in this case arise out of an incident that began as Eric Taylor led his intoxicated girlfriend through a crowded festival in Manchester.  The incident culminated in Taylor's arrest and criminal prosecution for assault, disorderly conduct, and resisting arrest.  Taylor alleges that the police officers involved in his arrest violated his civil rights and caused him serious injury when they unlawfully seized, arrested, detained, and confined him.  He asserts federal claims for false arrest, excessive force, malicious prosecution, and a violation of his due process rights against the City of Manchester, the Manchester Police Department, and the four officers involved in his arrest and subsequent transport to the police station: Todd Leshney, Chad Tennis, Robert Gravelle, and George Mallios.  He also presents state claims against the same defendants for false

imprisonment, malicious criminal prosecution, assault and battery, and negligence.  The defendants move for summary judgment.  Taylor objects.  For the reasons set forth below, I grant defendants' motion in part and deny it in part.

## I.  <u>BACKGROUND</u>

On the evening of May 25, 2008, Taylor and his girlfriend, Kaela Silvia, attended an open air concert and fireworks display in Manchester, New Hampshire called the Rock 101 Sky Show.  At approximately 9:00 p.m., Taylor found Silvia walking around the festival alone and intoxicated.  On finding her, Taylor decided it was time to leave and guided Silvia through the crowd toward the car by her hand.  Silvia wanted to stay at the Sky Show, but agreed to leave and did not resist.  As they were exiting, Taylor and Silvia stopped underneath a bridge by the entrance to the park and had what he describes as "a little argument."  Taylor testimony, Doc. No. 11-4.

Around the same time, James Marron, who was also attending the Sky Show, was standing about 15 yards up the hill from the entrance to the park with two of his friends.  Marron was watching the crowd and talking to Officer Leshney.  Josh Eaton,

2

one of Marron's friends, was the first to notice Taylor and
Silvia.  He said something to the effect of "Hey guys look at
this."  Marron deposition, Doc. No. 11-7.  In response to
Eaton's comment, Marron looked to his left and observed a man
(Taylor) pulling a woman (Silvia) by the arm.[1]  Marron then said
to Officer Leshney, "Hey, Todd, you might want to take care of
this."[2]

    At this point, the facts begin to diverge.  Taylor and
Silvia claim that Taylor did not have any physical contact with
Silvia during the course of their argument.  Taylor testimony,

---

[1] Marron also states that he: (1) heard Silvia say, "You're
hurting me"; (2) heard someone in what appeared to be a group of
the woman's female friends say something to the effect of "Let
her go.  You're hurting her"; and (3) heard the man yell at the
woman, "Fucking come with me right now."  Marron deposition,
Doc. No. 11-7.  There is no evidence in the record to suggest
that Marron told Officer Leshney what he had heard.

[2] It is not clear from the record exactly what Marron said to
Officer Leshney.  In his deposition, Marron recalls saying,
"Hey, Todd, you might want to take care of this" or "You might
want to take care of this before I have to."  Later in his
deposition, Marron mentioned that he told Officer Leshney that
"he's hurting her" or "he accosted her."  Leshney's affidavit
states that Marron said to him, "That guy just hit a girl or his
girlfriend" or words to that effect.  Marron maintains that he
never saw the man hit the woman and never told Officer Leshney
that he saw the man hit the woman.  While he may have
characterized his statements differently at different times, I
take the version most favorable to Taylor when ruling on the
present motion.

Doc. No. 11-4; Silvia testimony, Doc. No. 11-2.  Taylor did not assault Silvia, hit her, yank on her, or do anything physically inappropriate to her at all.  Taylor testimony, Doc. No. 11-4; Silvia testimony, Doc. No. 11-2.  Nevertheless, while they were arguing under the bridge, Taylor felt a hand grab his throat and he was thrown to the ground.  He did not know that he was being taken to the ground by a police officer because he was approached from behind.  Taylor hit the ground on his upper back and suffered a fractured vertebra and collapsed disk.

Officer Leshney claims that he turned around and saw Taylor pulling Silvia by the wrist.  He saw her slap Taylor's hand and heard her yell, "No, let me go!" as she attempted to pull her wrist away.  Officer Leshney signaled to Officer Chad Tennis to assist him and approached Taylor and Silvia.  As he was approaching, Officer Leshney observed Taylor pull Silvia in his direction causing her to lose her balance and almost fall.  Officer Leshney claims he made eye contact with Taylor and said, "Let her go."  Officer Leshney then grabbed Taylor's wrist, separated him from Silvia, rolled his wrist outward, put his hand in the area of Taylor's neck, stepped behind him, planted Taylor's back on the pavement, and identified himself as a

police officer.

Taylor claims that after Officer Leshney slammed him into the pavement, Leshney turned Taylor onto his stomach, trapping his hands beneath his body.  At some point, Officer Tennis arrived to assist Officer Leshney with the arrest.  While Taylor was on his stomach with his hands under his body, someone yelled, "Give me your hands."  Taylor was unable to move his hands because "two or three people" had their knees on his back and neck.  Officers Tennis and Leshney dragged Taylor's hands out from underneath him, scraping the tops of Taylor's hands, and put handcuffs on him.  While pinned to the ground, Taylor felt afraid, did not know what was going to happen to him or why he was being seized, and did not realize that the people seizing him were police officers.  Taylor was upset and yelling.  Taylor deposition, 11-6.

The officers handcuffed Taylor and brought him to his feet. Taylor noticed the Manchester police uniform when he was lifted up off the ground.  Without conducting any additional investigation, Officer Leshney yelled loud enough for those nearby to hear that Taylor had hit his girlfriend.  Although Taylor denied Officer Leshney's claim, he was dragged over to

the police cruiser by the handcuffs.

At the time of the incident, Officer Tennis was standing near Officer Leshney.  Officers Tennis and Leshney were assigned to patrol together that night.  Officer Tennis saw Officer Leshney get into a "scuffle" with Taylor and take him to the ground.[3]  Officer Tennis noticed that Taylor was resisting arrest and went to assist Officer Leshney put handcuffs on Taylor. Tennis affidavit, Doc. No. 7-3.

Officers Gravelle and Mallios were driving the transport wagon on May 25, 2008 and did not arrive on the scene until after Taylor had been handcuffed and brought over to the police cruiser.  Officer Gravelle was driving the transport wagon, and has no recollection of Taylor from that night.  Gravelle deposition, Doc. No. 7-5.  Officer Mallios states that Taylor was handcuffed and on his feet when they arrived at the scene. Mallios deposition, Doc. No. 7-4.  He states that Taylor was kicking, banging, and screaming in the transport wagon as they drove him to the police station.  Id.  When they arrived at the station, Officer Mallios remembers Taylor banging his head

_____

[3] Officer Tennis says he saw Officer Leshney "transitioning" Taylor to the ground.  Tennis affidavit, Doc. No. 7-3.  Taylor says he was "thrown" or "whipped" to the ground.  Taylor testimony, Doc. No. 11-4.

against the cinder block wall.  Id.

After Officers Gravelle and Mallios drove Taylor to the
police station in the transport wagon, Officer Leshney met
Taylor there and booked him.  At station, Taylor asked Officer
Leshney why he had been arrested and Officer Leshney told Taylor
that a bystander claimed that he had hit Silvia.

Officer Leshney filled out an incident report identifying
the following charges: (1) one count of assault on a police
officer; (2) one count of domestic assault; (3) disorderly
conduct; and (4) resisting arrest.  Doc. No. 11-9.

Taylor was acquitted at a trial in Manchester District
Court on October 16, 2008.


## II.  __STANDARD OF REVIEW__

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and that the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a).  The evidence submitted in support of the motion must be
considered in the light most favorable to the nonmoving party,
drawing all reasonable inferences in its favor.  See Navarro v.
Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001) (quoting Griggs-

7

Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If the moving party satisfies this burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

## III. ANALYSIS

Defendants move for summary judgment on all counts. I first address Taylor's federal constitutional claims against Officer Leshney. Next, I consider Taylor's claims against the other individual defendants. I then turn to Taylor's federal failure to train claim against the Manchester Police Department.

Finally, I address Taylor's state law claims against Officer Leshney and the Manchester Police Department.

## A.    **Federal Claims Against Officer Leshney**

Taylor asserts several constitutional claims against Officer Leshney.  He alleges that Officer Leshney lacked probable cause to arrest him and used excessive force to effectuate the arrest.  Taylor also presents claims against Officer Leshney for malicious prosecution and a violation of his due process rights.  Officer Leshney challenges these claims by contending that he is entitled to qualified immunity.

The doctrine of qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Mutter v. Town of Salem, 945 F. Supp. 402, 405 (D.N.H. 1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A two-part inquiry is used to determine whether an officer is entitled to qualified immunity: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the

time of the defendant's alleged violation". Glik v. Cunniffe,
655 F.3d 78, 81 (1st Cir. 2011) (quoting Maldonado v. Fontanes,
568 F.3d 263, 269 (1st Cir. 2009)).  "Immunity exists even where
the abstract 'right' invoked by the plaintiff is well-
established, so long as the official could reasonably have
believed 'on the facts' that no violation existed." Mlodzinski
v. Lewis, 648 F.3d 24, 33 (1st Cir. 2011) (quoting Dirrane v.
Brookside Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002)).

## 1.  **Unlawful Arrest**

Police officers are entitled to qualified immunity for a
Fourth Amendment claim arising from an otherwise lawful
warrantless arrest "so long as the presence of probable cause is
at least arguable." Glik, 655 F.3d at 88 (quoting Ricci v.
Urso, 974 F.2d 5, 7 (1st Cir. 1992)).  Probable cause to arrest
exists when "the facts and circumstances within [the police
officers'] knowledge and of which they had reasonably
trustworthy information were sufficient to warrant a prudent
[person] in believing that the [defendant] had committed or was
committing an offense." Rivera v. Murphy, 979 F.2d 259, 263
(1st Cir. 1992) (alterations in original) (quoting United States
v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987).

Taking the facts in the light most favorable to Taylor, no reasonable officer could have found probable cause to support a belief that Taylor had assaulted his girlfriend.  See Glik, 655 F.3d at 88.  Marron said something along the lines of "Todd, you better take care of this" to Officer Leshney.  When Officer Leshney looked over, he would have seen Taylor and Silvia having a "little argument" under the bridge.  Taylor was slightly irritated, but not angry, and was not being physically forceful towards Silvia.  No reasonable officer could have concluded from these facts that Taylor had committed a crime.  See United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir. 1994) (holding that to establish probable cause, the government must demonstrate that "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense").

### 2.  **Excessive Force**

Police officers violate an arrestee's Fourth Amendment right to be free from excessive force if they use more force than is objectively reasonable under the circumstances to effectuate an arrest.  Graham v. Connor, 490 U.S. 386, 396–97

11

(1989).  To succeed on an excessive force claim, a plaintiff must establish that the defendants' actions in making the arrest were objectively unreasonable in light of the facts and circumstances known to the arresting officer on the scene at the time of the arrest.  Calvi v. Knox Cnty., 470 F.3d 422, 428 (2006).

Determining whether the force used to make an arrest was reasonable is a fact based inquiry.  Graham, 490 U.S. at 396. Factors courts consider include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest[.]" Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (quoting Graham, 490 U.S. at 396).

An officer may be entitled to qualified immunity from an excessive force charge even if the force used was excessive under the circumstances.  To overcome a qualified immunity defense to an excessive force claim, a plaintiff must "show an incommensurate use of force beyond that needed to establish a garden-variety excessive force claim and, further, beyond the 'hazy border'" between acceptable and excessive force.  Morelli

12

v. Webster, 552 F.3d 12, 24 (1st Cir. 2009) (quoting Saucier v.
Katz, 533 U.S. 194, 206 (2001)).

Construing the facts in the light most favorable to Taylor,
and viewing those facts from the perspective of a reasonable
officer, a reasonable jury could find that Officer Leshney used
excessive force when he arrested Taylor.  According to Taylor,
he had engaged only in a verbal argument with his girlfriend.
He was not being physically forceful towards her.  Taylor
testimony, Doc. No. 11-4.  Taylor was not committing a crime or
doing anything that could be misunderstood as a crime when
Officer Leshney allegedly approached from behind, hit Taylor's
neck with his forearm, and slammed him to the pavement.  See id.
Taylor did not pose an immediate threat to the safety of the
officers or others and was not actively resisting arrest when
Officer Leshney allegedly struck him.  See id.  Accordingly,
Officer Leshney's alleged conduct "was such an obvious violation
of the Fourth Amendment's general prohibition on unreasonable
force that a reasonable officer would ... be on notice that his
conduct was unlawful."  See Jennings, 499 F.3d at 17.  Thus, he
is not entitled to qualified immunity on the present record.

### 3.  __Malicious Prosecution__

Taylor appears to base his federal malicious prosecution claim on both the Fourteenth Amendment's due process clause and the Fourth Amendment.  As I explain, however, neither provision provides him with a basis for relief.

Taylor cannot maintain a substantive due process claim for malicious prosecution because the First Circuit has held that "'substantive due process may not furnish the constitutional peg on which to hang' a federal malicious prosecution tort." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (quoting Albright v. Oliver, 510 U.S. 266, 271 n.4 (1994)).  To the extent that he seeks to couch his claim as a procedural due process violation, the claim is also a non-starter because New Hampshire law provides an adequate state law remedy for malicious prosecution. See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 43 (1st Cir. 1994) (procedural due process claim for malicious prosecution unavailable where an adequate remedy is available under state law).

The First Circuit has not yet determined whether a plaintiff may base a malicious prosecution claim on the Fourth Amendment.  See Harrington v. City of Nashua, 610 F.3d 24, 30

14

(1st Cir. 2010) (leaving question unresolved).  In a case like
this, however, where the plaintiff was arrested without a
warrant, there can be no viable federal malicious prosecution
claim based on the Fourth Amendment unless the plaintiff can
demonstrate a post-arraignment deprivation of liberty that
qualifies as a seizure under the Fourth Amendment.  Id. at 32.
Taylor has failed to point to any evidence to support this
element of his claim.  Accordingly, he may not maintain a
malicious prosecution claim against Officer Leshney under
federal law.

### 4. **Due Process Claims**

Taylor argues that Officer Leshney violated his substantive
due process rights by unlawfully detaining him for several hours
following his arrest.  He also claims that Officer Leshney
violated both his substantive and procedural due process rights
by failing to properly investigate the charges brought against
Taylor.  Both claims lack merit.

The Supreme Court has long recognized that "[w]here a
particular Amendment 'provides an explicit textual source of
constitutional protection' against a particular sort of
government behavior, 'that Amendment, not the more generalized

notion of "substantive due process," must be the guide for analyzing [such] claims." Albright, 510 U.S. at 273 (plurality opinion) (quoting Graham, 490 U.S. at 395).  The detention that Taylor seeks to challenge is the routine detention that resulted from his arrest.  Because he may sue under the Fourth Amendment to challenge the lawfulness of his arrest, he has no claim that the arrest and the detention that followed also violated his right to due process.

Taylor's failure to investigate claim also fails.  To the extent that Taylor bases his claim on Officer Leshney's alleged failure to investigate before arresting him, his claim is cognizable, if at all, only under the Fourth Amendment. Further, once an arrest has been effectuated, police officers have no affirmative duty to investigate when a person in custody proclaims their innocence.  See Baker v. McCollan, 443 U.S. 137, 145–46 (1979); see also Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986) ("Once the arrest has been properly effected, it is the *magistrate* and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released.").  Thus,

Taylor is not entitled to assert a failure to investigate claim against Officer Leshney under the due process clause.

**B.**  **Claims Against Tennis, Gravelle, and Mallios**

Taylor asserts federal claims against Officers Tennis, Gravelle, and Mallios for unlawful arrest, excessive force, malicious prosecution, and a violation of the due process clause. He also asserts state law claims against the same officers for assault and battery, false imprisonment, malicious prosecution, and negligence.

While there is some disagreement about what Officer Tennis saw and did, Taylor's claims against him are unsupportable even when I resolve all conflicts in the evidence in Taylor's favor. First, there is simply no support in the record for any claim that Tennis arrested Taylor, used excessive force against him, or maliciously prosecuted him. If anyone can be held liable for these acts, it is Officer Leshney, not Officer Tennis. To the extent that Taylor claims that Officer Tennis is liable because he failed to prevent Officer Leshney from violating Taylor's constitutional rights, the record does not support a claim that Officer Tennis knew enough about what had happened immediately prior to Taylor's arrest to form a view about the propriety of

Officer Leshney's actions.   Without such evidence, a reasonable jury could not conclude that Officer Tennis violated Taylor's rights by failing to intervene to stop Office Leshney from arresting him.

Taylor has even less evidence to support his claims against Officers Mallios and Gravelle.   Both officers became involved in the case only after Taylor had been arrested and neither officer was responsible for his prosecution.   Accordingly, Taylor has no basis for any of his claims against Officers Tennis, Mallios, or Gravelle.

**C.    <u>Failure to Train</u>**

Taylor brings a federal claim against the Manchester Police Department for failing to train Officer Leshney and his fellow officers "to not exert excessive force when seizing and arresting an individual, to identify themselves as police officers prior to seizing and arresting an individual, and to appropriately investigate whether a crime has been committed prior to and/or after seizing and/or arresting an individual." Doc. No. 1-1.

Local governments ordinarily cannot be held liable under § 1983 unless a plaintiff is able to prove that he was injured as

a result of "official municipal policy."  Connick v. Thompson,
131 S.Ct. 1350, 1359 (2011).  Although a decision by a
government entity not to train its employees may qualify as a
municipal policy, the failure to train must rise to the level of
"deliberate indifference to the rights of persons with whom the
[untrained employees] come into contact."  Id. (quoting City of
Canton v. Harris, 489 U.S. 378, 388 (1989)).

Here, Taylor's claim fails because he has not provided any
evidence to prove that Manchester's failure to train its
employees evidences a "deliberate indifference" to the rights of
the City's inhabitants.  See id.  Although Taylor asserts that
Officer Leshney was not adequately trained because he stated in
his affidavit that "[t]he maneuver I used to take [Taylor] down
was part of my law enforcement training," Doc. No. 7-2, the
maneuver he was describing was very different from what Taylor
claims actually happened.  Because Taylor offers no other
evidence to support his claim, it necessarily fails.

D.    **State Law Claims Against Officer Leshney**

Taylor has sued Officer Leshney under state law for assault
and battery, false imprisonment, and malicious prosecution.
Leshney responds by arguing that the evidence will not support

any of Taylor's state law claims.  I first address the assault

and battery and false imprisonment claims together and then

separately address Taylor's malicious prosecution claim.

### 1. <u>Assault and Battery and False Imprisonment</u>

Leshney's challenge to Taylor's assault and battery and

false imprisonment charges are based upon his assertion that he

used the minimum amount of force that was required to arrest

Taylor and that he was justified in making the arrest because he

had probable cause to believe that Taylor had assaulted his

girlfriend.  The problem with this argument is that it fails to

follow the summary judgment standard.  As I have explained, when

I rule on a motion for summary judgment, I must view the

evidence in the light most favorable to the non-moving party.

Using this standard, I must reject Leshney's request for summary

judgment because, if a reasonable jury accepted Taylor's view of

the evidence, it could find that Officer Leshney both assaulted

Taylor and falsely imprisoned him.

I am also not persuaded by Officer Leshney's argument that

he is entitled to official immunity.  Official immunity cannot

save Officer Leshney at the summary judgment stage because a

reasonable jury could conclude from the evidence that he acted

wantonly or recklessly when he assaulted Taylor and arrested him without probable cause.  See Castro v. Panica, No. 10-cv-554-PB, 2012 WL 2919436, at *23-24 (D.N.H. July 17, 2012) (explaining official immunity doctrine and concluding that officer did not have official immunity because evidence permitted conclusion that he acted wantonly or recklessly).

2. **Malicious Prosecution**

To succeed on a malicious prosecution claim in New Hampshire, Taylor must "prove that he was subjected to a criminal prosecution instituted by the defendant without probable cause and with malice, and that the criminal proceeding terminated in his favor."  See Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973).  Leshney's primary argument is that he cannot be held liable for malicious prosecution because the undisputed evidence establishes that it was the City Solicitor who decided to prosecute Taylor rather than Officer Leshney.[4]

---

[4]  Officer Leshney also argues that the malicious prosecution claim fails because he had probable cause to institute charges against Taylor. I reject this argument for the same reason that I rejected Officer Leshney's challenges to Taylor's false imprisonment claim.  When I view the evidence from Taylor's perspective, it will support a reasonable jury verdict that Leshney lacked probable cause to charge Taylor.

The Restatement (Second) of Torts recognizes that a person who causes a third party to institute criminal charges against someone can be liable for malicious prosecution if the other elements of the claim are satisfied.  See Restatement (Second) of Torts, § 653 (1977).  Cases in a number of jurisdictions have also held that a defendant who causes charges to be brought against someone by presenting false evidence in support of a charge can be liable for malicious prosecution if the charges are instituted on the basis of the false information.  See, e.g., Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, The American Law of Torts § 28.6 at 562 (2011) (collecting cases).  The reasoning that underlies these cases is that an independent exercise of prosecutorial discretion is impossible when charges are urged on a prosecutor on the basis of false information.  See Smiddy v. Varney, 665 F.2d 261, 267 (9th Cir. 1981).

In the present case, when the evidence is viewed in Taylor's favor, it is sufficient to permit a conclusion that Officer Leshney caused Taylor to be prosecuted by arresting him and providing a police report to his supervisors that falsely claimed that Taylor had engaged in criminal activity.

Accordingly, I decline to grant summary judgment on Taylor's

state law malicious prosecution claim.[5]

### 3.  Other Claims

Wanton and reckless conduct (Count XI) and enhanced damages

(Count XII) are not causes of action.  Accordingly, summary

judgment is granted with respect to these claims.


## IV.  CONCLUSION

For the reasons set forth in this order, defendants' motion

for summary judgment (Doc. No. 7) is granted with respect to all

of Taylor's claims against defendants Tennis, Gravelle, and

Mallios (Counts I, II, III, IV, V, VII, VIII, IX, X, XI, and

XII), his federal claim against Leshney for malicious

prosecution (Count IV), and his failure to train claim against

the City of Manchester (Count VI).  The motion is denied with

respect to Taylor's federal claims against Leshney for excessive

force and unlawful arrest, and his state law claims against

Leshney and the City for assault and battery, false

---

[5]  Although Taylor names Officer Leshney in his negligence claim,
he does not argue in opposition to defendants' motion for
summary judgment that Officer Leshney is liable on this claim.
Accordingly, I decline to address the claim on its merits.

imprisonment, and malicious prosecution (Counts I, II, VII,

VIII, and IX).

    SO ORDERED.

                                 /s/Paul Barbadoro
                                 Paul Barbadoro
                                 United States District Judge

November 20, 2012

cc:   John W. Dennehy, Esq.
      Robert J. Meagher, Esq.